**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| ARSEN JATCHVADZE,<br>Petitioner,<br>vs.<br>MARKWAYNE MULLIN et al.,<br>Respondents. | No. 26-CV-183-CJW-KEM<br><br>**ORDER** |

---

Petitioner Arsen Jatchvadze's amended petition for writ of habeas corpus is before the Court. (Doc. 12). Respondents filed a response and a supplement to their response. (Docs. 6 & 13). Petitioner filed a reply. (Doc. 19). For the following reasons, the Court **denies** the petition and **dismisses** the case.

## *I. BACKGROUND*

Petitioner previously filed for habeas corpus relief. (26-CV-108, Doc. 1). In that case, the Court summarized petitioner's immigration history, and for that reason, the Court does not repeat it in its entirety here. (*Id.*, at 1-2). In short, petitioner is a citizen of Georgia. (*Id.*, at 1). On February 15, 2024, Immigration and Customs Enforcement ("ICE") released him on parole. (*Id.*, at 2 (citing (Doc. 5, at 4)); 8 U.S.C. § 1182(d)(5)(A)). That parole authorization was valid for one year, until February 15, 2025. (*Id.* ("[y]our parole authorization is valid for one year . . . and will automatically terminate . . . at the end of the one-year period")); *see also* 8 U.S.C. § 1182(d)(5)(A) ("parole of such alien[1] shall not be regarded as an admission of the alien and when the

---

[1] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States").

On April 19, 2026, petitioner was arrested in Davenport, Iowa for public intoxication. (26-CV-108, Doc. 18-5); *see* Iowa Code § 123.46(2). On April 20, 2026, after issuing a warrant for his arrest, petitioner was detained by ICE and transferred to ICE custody. (26-CV-108, Docs. 1, at 10; 18-4). On May 6, 2026, petitioner filed his first petition for habeas corpus with the Court, asking "the Court to issue a writ of habeas corpus and order [respondents] to justify my continued detention." (26-CV-108, Doc. 1, at 8). The Court appointed petitioner counsel, but he requested to be able to proceed pro se and his appointed counsel withdrew. (26-CV-108, Docs. 6 (order appointing public defender); 7 & 8 (appearances); 9 (motion to withdraw); 14 (order granting motion to withdraw)).

In support of his petition, petitioner's aunt filed a copy of petitioner's interim notice authorizing parole from February 15, 2024. (26-CV-108, Doc. 5). That document cited to Title 8, United States Code, Section 1182(d)(5)(A), the Code section that authorizes release of arriving aliens and aliens referred for an asylum merits interview at the discretion of the Secretary of Homeland Security "temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." (*Id.*, at 3); 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 235.3(b), (c). Respondents filed a declaration by Deportation Officer Daniel Archer in which he stated that the "declaration is based upon my professional knowledge, information obtained from other individuals employed by ICE, and information obtained from [Department of Homeland Security ("DHS")] records." (26-CV-108, Doc. 18-1, at 2).

Officer Archer stated that "[o]n February 15, 2024, [p]etitioner was released on his own recognizance." (*Id.*, at 4).

The Court denied petitioner's first petition, finding that, first, petitioner was an applicant for admission, subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court cited to *Avila v. Bondi*, 170 F.4th 1128, 1136 (8th Cir. 2026), for that finding. (26-CV-108, Doc. 21, at 4–5). The Court also found that petitioner's expired parole did not provide him with a liberty interest that the government could not revoke without affording him due process. (*Id.*, at 6 ("Petitioner's parole—which expired February 15, 2025—does not afford him relief either.")).

On June 19, 2026, petitioner's public intoxication charge was dismissed. *State v. Jatchvadze*, SMCR458070 (Dist. Ct. Scott Cnty. 2026).[2] On July 28, 2026, an immigration judge granted petitioner's application for asylum. (Doc. 1-2, at 19; Doc. 9-6). On August 19, 2026, DHS appealed the immigration judge's decision. (Doc. 9-1, at 4; Doc. 9-7).

On September 25, 2026, petitioner filed the instant amended petition. (Doc. 12). Petitioner previously filed Exhibits 1 and 2. (Docs. 1-2 & 1-3[3]). Respondents previously filed a response and provided the Court with a declaration from Officer Archer and Exhibits A, B, C, D, E, F, and G. (Docs. 6, 9-1 through 9-8). On October 2, 2026, respondents filed a supplement to their response. (Doc. 13). On October 13, 2026, petitioner filed a reply. (Doc. 19). Petitioner remains in ICE custody at the Hardin County Correctional Center.

---

[2] Iowa state court criminal and civil records may be accessed online at: http://www.iowacourts.gov/For_the_Public/Court_Services/Docket_Records_Search/index.asp. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

[3] Exhibit 2 is a copy of the Court's order in 26-CV-108.

## *II. LEGAL STANDARD*

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). A petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## *III. DISCUSSION*

Before getting to petitioner's arguments, the Court addresses an initial matter. The Court then addresses petitioner's two arguments in turn.

### *A. Initial Matter*

In petitioner's amended petition, he argues that petitioner proceeding pro se in his first habeas corpus proceeding "resulted in an incorrect finding of fact by the court," namely that petitioner was released on parole. (Doc. 12, at 2, 4 ("[Petitioner] did not receive humanitarian parole. He received release on recognizance[.]"), 20 ("The court was incorrect that [p]etitioner was on humanitarian parole[;] he had actually been release[d] on his own recognizance.")). After making that assertion, petitioner flip-flops to stating in his reply that he "was undisputedly given humanitarian parole." (Doc. 19, at 1). He then again changes his position to argue that he has a remaining "claim regarding his prior release on recognizance." (Doc. 19, at 8).

The Court has two issues with this change in position and varying assertions. First, petitioner's counsel frequently represents clients filing habeas corpus petitions under Section 2241 in this Court. The Court expects all attorneys, but in particular those who frequently appear in cases, to read the cases and the documents in the record that they cite including previous cases with the same parties raising the same claims. Petitioner's counsel cites to the record in his previous habeas case here, including the document in the record that the Court based its factual finding on. (Doc. 12, at 2 (citing 26-CV-108, Doc. 5, at 4)). But petitioner's counsel does not acknowledge that document or explain why the Court should not have relied on it. Rather, petitioner's counsel appears to have closed his eyes to an adverse fact and the documentation supporting it. In addition, petitioner provided no documents to support his claim that the Court should now find differently. In fact, his only two exhibits are the immigration judge's July 2026 grant of asylum and a copy of the Court's previous order. (Docs. 1-2 & 1-3). Petitioner has the burden of proof in this case. If he intends to make a claim, he must back it up with documentation in the record. Counsel cannot simply ignore facts that are in the record that hurt his client without providing any contrary documentation.

Second, there was no incorrect finding of fact in petitioner's previous case. As the Court explained in a case in which petitioner's counsel was also counsel of record, contradictions between official records and a declaration or testimony support a finding of adverse credibility as to the contradictory declaration or testimony. *Nadeem v. Holder*, 599 F.3d 869, 873 (8th Cir. 2010); *see also Diaz-Perez v. Holder*, 750 F.3d 961, 963–64 (8th Cir. 2014) (affirming an immigration judge's rejection of testimony that the petitioner crossed the border in a car through a port of entry where he was waved through when the immigration documents were in direct conflict with that testimony). In petitioner's previous case, the Court reviewed both petitioner's own filing of his interim notice authorizing parole, the declaration of Officer Archer, and petitioner's own

statements. Petitioner, in his reply, described his status as "DHS then exercised its discretion to release and parole me into the United States while my asylum proceedings remained pending." (Doc. 19, at 1–3 (repeating this statement three times); *Id.*, at 7 ("DHS released and paroled me into the United States")). Because Officer Archer's declaration, he stated, was based on his review of the documents in petitioner's DHS record, when that declaration contradicted the document and petitioner's own statements, the Court found the document and petitioner credible and disregarded the contrary statement by Officer Archer. For those reasons, the Court found "humanitarian parole" to be the most accurate description of the basis for petitioner's release in February 2024. That petitioner may have been released without bond on humanitarian parole does not change the categorization.

Although petitioner now attempts to distinguish humanitarian parole under Section 1182(d)(5)(A) from conditional parole under Section 1226(a)(2)(B), and asserts that he was released on conditional parole, petitioner again ignores the document in the record that cites to Section 1182(d)(5)(A) as the basis for petitioner's February 2024 release. *See* (26-CV-108, Doc. 5, at 3 ("This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) has decided to parole you from its custody pursuant to its authority under section 212(d)(5)(A) of the Immigration and Nationality Act.")). As petitioner has provided no evidence to show that that document was inaccurate, the Court continues to find that petitioner was granted humanitarian parole which expired on February 15, 2025.

***B. Prior Release***

Now turning to petitioner's arguments, petitioner argues, first, that his "prior release on his own recognizance into the United States provides him with a liberty interest that is protected by the due process clause." (Doc. 12, at 1). He asks for immediate release. (*Id.*, at 14; Doc. 19, at 11). Respondents answer that "[p]etitioner was released

on a one-year humanitarian parole." (Doc. 13, at 3). Respondents state that "the Court should deny the newly-asserted claim." (*Id.*, at 4).

Here, as stated above, petitioner was released on humanitarian parole which expired over a year before his current detention; as petitioner acknowledges, "[r]elease on recognizance is not 'humanitarian' 'parole into the United States' under 8 U.S.C. § 1182(d)(5)(A)[.]" (Doc. 12, at 2). The Court rejects petitioner's claim that "the [C]ourt has never decided the issue of whether [p]etitioner was released on his own recognizance." (Doc. 19, at 10). The Court, as explained above, considered the evidence in the record, determined that petitioner was released on humanitarian parole, and rejected that ground as a basis for relief.

Of the cases that petitioner cites to support his argument on this prior release ground, some are not for grantees of expired humanitarian parole, and none involved an order of immediate release. In *Muse v. Mullin*, the Court found that release under the Alternatives to Detention program afforded that petitioner a liberty interest that could not be revoked without due process. No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *5 (N.D. Iowa Apr. 14, 2026). The Court ordered a bond hearing. *Id.* at *9. In *De la Luz Baez v. Mullin*, the Court found that a bona fide determination on that petitioner's U visa application amounted to a liberty interest that the government could not arbitrarily revoke. Order, 26-CV-72-CJW-KEM, at *7 (N.D Iowa June 2, 2026), Dkt. No. 28. The Court ordered a bond hearing. *Id.* In *Martin Martin v. Mullin*, the Court found that when that petitioner was released from Office of Refugee Resettlement custody to her sister as an unaccompanied minor, that release was a liberty interest that could not be revoked without a bond hearing. Order, No. 26-cv-92, at *7 (N.D. Iowa May 26, 2026), Dkt. No. 14. The Court found the same for her grant of special immigrant juvenile status and ordered a bond hearing. *Id.*, at *7–9.

The two cases in which the Court found that prior release on expired humanitarian parole entitled the petitioner to a bond hearing both post-date the Court's ruling on petitioner's first habeas petition and do not include an order for immediate release. *See* Order, *Iman Hassan v. Mullin*, No. 26-CV-4044, at *6 (N.D. Iowa June 26, 2026), Dkt. No. 15 (denying request for immediate release); Order, *Fuenmayor Bencomo v. Gardner*, No. 26-CV-171, at * (N.D. Iowa Sept. 10, 2026), Dkt. No. 19 (ordering a bond hearing but denying a temporary restraining order). Likewise, Judge Strand has found that an alien with expired humanitarian parole but with an accepted application for asylum had a liberty interest that afforded him a bond hearing. *Villegas Salazar v. Sheriff of Linn County*, No. C26-98-LTS-MAR, 2026 WL 1651508, at *4 (N.D. Iowa June 8, 2026); *Matamoros Rodriguez Gonzalez Arias v. Woodbury Cnty. Jail*, No. C26-4041-LTS-MAR, 2026 WL 1735035, at *4 (N.D Iowa June 16, 2026). Petitioner previously requested a bond hearing and the Court denied it.

Despite petitioner's argument that "Regardless, SOMETHING went wrong with the first proceeding," (Doc. 19, at 3), the Court finds that nothing went wrong in petitioner's prior case. Petitioner did not provide support in the form of citations to cases or statutes for his due process clause claim, and, without support for granting petitioner relief, the Court declined to do so. As the Court stated, "[t]he district courts cannot be expected to consider matters that the parties have not expressly called to their attention, even when such matters arguably are within the scope of the issues that the parties have raised." *Stafford v. Ford Motor Co.*, 790 F.2d 702, 706 (8th Cir. 1986); *see also Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir.2006) ("[W]e will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."); *Gilbert v. Des Moines Area Com. Coll.*, 495 F.3d 906, 915 (8th Cir.2007) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific

facts that might support the nonmoving party's claim." (internal quotation marks omitted)). In the two cases that post-date the Court's ruling in petitioner's prior case, those petitioners provided the Court with legal support for their arguments, and the Court adapted its position on a liberty interest and an expired grant of humanitarian parole based on that support. Likewise, Judge Strand's orders are from the same day or after the order on petitioner's previous habeas petition.

Because petitioner has previously raised this due process clause claim, his claim is now barred by res judicata. *See Sandy Lake Band of Mississippi Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013), stating:

> Res judicata incorporates the concepts of both issue preclusion and claim preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). A party is precluded from litigating such a matter in a subsequent case, "whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citing Restatement (Second) of Judgments §§ 17, 27 (1980); D. Shapiro, *Civil Procedure: Preclusion in Civil Actions* 32, 46 (2001)). We have said that issue preclusion has five elements:
>
>> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir.2007) (quoting *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir.1997)). The Court considered and rejected the due process clause argument with the same parties and on the merits previously, and the

Court is unable to return to that claim now. Petitioner could have appealed this Court's order in this case, if he believed the Court erred, but declined to do so. Thus, the Court again **denies** petitioner's petition as to this first ground.

### *C. Pending Asylum Case*

Second, petitioner argues he has a due process interest in his grant of asylum. (Doc. 12, at 14). Respondents argue that "8 U.S.C. § 1225(b)(2) continues to mandate petitioner's detention until his removal proceedings are complete." (Doc. 6, at 5). In addition, respondents point out that "the government has not yet approved granting petitioner any form of immigration benefit, because the immigration judge's asylum decision is not final." (*Id.*, at 6). Respondents clarify, "An immigration judge's decision is not final while a timely appeal is pending before the BIA." (Doc. 6, at 5 (citing 8 C.F.R. § 1003.39; *Matter of E-Y-F-G*, 29 I&N Dec. 103, 105 (BIA 2025) ("The Immigration Judge's grant of relief in removal proceedings is not final as it has been appealed.").

Here, petitioner cites to no cases finding that a grant of asylum that is on appeal equates to a liberty interest requiring release. He also cites to no cases as support for his assertion that an action on appeal is final, arguing instead:

> DHS has appealed, but until they win that appeal, the Attorney General, exercising and delegating the power given to him by Congress, has said that the Petitioner can stay. This grant might be taken away from the Petitioner, but for the moment, the default view should be that the Petitioner has received an immigration benefit (which may yet be taken away) and the government is contesting the immigration benefit (a different section of the government).

(Doc. 19, at 5). Petitioner does not engage with the cases cited by respondents to demonstrate that a grant of asylum on appeal is not final. *See, e.g.*, *Jumale v. Barr,* No. 19-CV-1229-FPG, 2019 WL 5540794, at *2 (W.D.N.Y. Oct. 28, 2019) ("[S]ince the

Government appealed the IJ's decision to the BIA, the IJ's decision is not and cannot be final until the appeals process concludes.").

The Court agrees with respondents on this issue. While petitioner's asylum application remains pending on appeal, it is not a final grant of an immigration benefit that confers a liberty interest. *See, e.g.*, *Hurtado-Ruiz v. Holder*, No. 10-CV-0554-PHX-PGR (MHB), 2011 WL 671746, at *2 (D. Ariz. Feb. 16, 2011) (holding that an appeal made a removal order not final); *Akinola v. Weber*, No. 09–3414, 2010 WL 376603, at *4 (D.N.J., January 26, 2010) (holding that immigration proceedings are still pending because the government appealed the immigration judge's decision on deferral of removal); *Ali v. Sessions*, No. 18-2617 (DSD/LIB), 2019 WL 13216944, at *1 (D. Minn. Feb. 1, 2019) (stating that "the parties agree that the order is provisional and not final until affirmed by the Board of Immigration Appeals" and "[a]s a result, nothing has legally changed"). The regulations state so explicitly: "Except when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39. The prior cases in which the Court found that an immigration benefit amounted to a liberty interest involved immigration benefits that were not on appeal. *See De la Luz Baez v. Mullin*, 26-CV-72-CJW-KEM, at *7; *Martin Martin v. Mullin*, No. 26-cv-92, at *7–8.

Likely, once petitioner's asylum application is final, there will be no further ground for his detention—as he will no longer be an applicant for admission under Title 8, United States Code, Section 1225(b)(2)—and he may request release from the immigration court. But that is not the procedural posture of the case at this point, and without any authority to find to the contrary, the Court cannot grant petitioner a bond hearing. Thus, the Court **denies** petitioner's petition as to this second ground.

## *IV. CONCLUSION*

For those reasons, petitioner's amended petition for writ of habeas corpus is **denied**. (Doc. 12). This matter is **dismissed**. Judgment shall enter in favor of respondents. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED** this 16th day of October, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa